IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| CHERIE E. DOBBS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 05-1801-JO |
| | ) | |
| v. | ) | <u>OPINION AND ORDER</u> |
| | ) | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | ) ) | |
| | ) | |
| Defendant. | ) | |

Jason D. Hayward
DAVIS ADAMS FREUDENBERG DAY & GALLI
600 N.W. Fifth Street
Grants Pass, OR  97527

  Attorney for Plaintiff

Johanna Vanderlee
Michael McGaughran
SOCIAL SECURITY ADMINISTRATION
Office of the General Counsel
701 Fifth Avenue
Suite 2900 M/S 901
Seattle, WA  98104

Neil J. Evans
UNITED STATES ATTORNEY'S OFFICE
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902

   Attorneys for Defendant

JONES, Judge:

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security denying her application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act.  *See* 42 U.S.C. §§ 401-33.  This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Following a careful review of the record, I conclude that the decision of the Commissioner must be affirmed.

## ADMINISTRATIVE HISTORY

Plaintiff Cherie E. Dobbs was born on June 3, 1958; she was therefore forty-two years old on September 22, 2000, the onset date of her alleged disability.  Tr. 81.  Plaintiff has a high school education.  Tr. 97.  Just prior to the onset of her disability, plaintiff worked as a school bus driver and care giver.  Tr. 92.  She alleges that she had to stop working due to lower back pain caused by a work-related injury sustained on September 22, 2000.  Tr. 91, 173.

Plaintiff filed her application for DIB on May 4, 2001, alleging disability beginning September 22, 2000.  Tr. 91.  She reported that she had to stop working because of lower back pain, high blood pressure, and depression.  Tr. 91.  Her application was denied initially and on reconsideration.  Tr. 55-59, 63-65.  Plaintiff then requested a hearing, which was held before an Administrative Law Judge ("ALJ") on March 2, 2004.  Tr. 679-742.  Plaintiff, who was represented by attorney Gregory Day, appeared and testified.  Tr. 20.  Plaintiff's husband, Bobby Dobbs, and vocational expert ("VE") Dennis Elliot also testified.  Id.  On October 28, 2004, the

2 - OPINION AND ORDER

ALJ issued a decision denying plaintiff's application, finding that she was not disabled as defined by the Social Security Act and therefore was not entitled to a period of disability or to DIB. Tr. 29. The ALJ's decision became the final decision of the Commissioner on November 2, 2005, when the Appeals Council declined review. Tr. 8-10.

## STANDARD OF REVIEW

This court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *see also* Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Tylitzki v. Shalala, 999 F.2d 1411, 1413 (9th Cir. 1993). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld if it is a rational interpretation of the evidence, even if there are other possible rational interpretations. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989); Andrews, 53 F.3d at 1039-40.

## SUMMARY OF THE ALJ'S FINDINGS

The ALJ employed a five-step "sequential evaluation" process in evaluating plaintiff's disability, as required. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant has the initial burden of proving a disability in steps one through four of the analysis. *See* Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). Then, if the claimant establishes that she is unable to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful activity in jobs existing in significant numbers in the national economy.

3 - OPINION AND ORDER

*See* id. (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir.1989)); Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999).

In this case, the ALJ first determined that plaintiff has not engaged in disqualifying substantial gainful activity since the alleged onset of her disability. Tr. 21. Second, the ALJ found that Dobbs suffers from the following medically determinable impairments which, in combination, are severe: degenerative disc disease at L4-S1 with disc space narrowing, a broad-based bulge of the nucleosis pulposi and bilateral facet of arthropathy, asthma, attention deficit hyperactivity disorder, and an adjustment disorder with mixed anxiety and depressed mood. Tr. 21. These findings at steps one and two are not in dispute.

Third, the ALJ determined that plaintiff's impairments did not meet or equal the requirements of any impairment in the Listing of Impairments, Appendix 1, Subpart P, Regulations Part 404. Tr. 22-23. The ALJ also determined that plaintiff retains the residual functional capacity ("RFC") to lift twenty pounds occasionally and ten pounds frequently; sit, stand, and walk for four hours each in an eight-hour workday, with a sit/stand option every thirty minutes. Tr. 23. Based on the medical evidence in the record, the ALJ found that plaintiff has the following limitations: she must avoid climbing ladders, ropes, or scaffolds; she must avoid concentrated exposure to respiratory irritants; she must avoid repetitive lifting, pushing, pulling, carrying, and bending from the waist to the floor with weight; and she lacks the mental capacity to perform detailed and complex job tasks. Id. These findings are in dispute. (Pl.'s Opening Br. at 7-8.)

At the fourth step of the evaluation, the ALJ determined that plaintiff could not perform her past relevant work as a school bus driver, route driver supervisor, construction worker, or home attendant. Tr. 27. This finding is not in dispute.

Finally, at the fifth step of the evaluation, the ALJ found that plaintiff can perform jobs existing in significant numbers in the national economy, and, therefore, she is not disabled within the meaning of the Social Security Act. Tr. 27-28. This finding is in dispute.

## **DISCUSSION**

Plaintiff challenges the final decision of the Commissioner on the grounds that the ALJ's determinations are not supported by substantial evidence, considering the record as a whole, and that the decision is based on improper legal standards. (Pl.'s Opening Br. at 7-8.) Plaintiff contends that, because the ALJ erred at steps three and five in the analysis, this case should be reversed and remanded for a determination of benefits. (Pl.'s Opening Br. at 9.) Specifically, plaintiff argues that the ALJ failed to consider evidence in the record demonstrating that plaintiff's impairments met or equaled an impairment in the Listing of Impairments, Appendix 1, Subpart P, Regulations Part 404; that the ALJ did not afford sufficient weight to the opinion of plaintiff's treating physician in making the RFC determination; and that the ALJ erred by relying on the VE's testimony to determine that plaintiff was capable of performing the jobs of gate guard or small products assembler.

1.   Listing of Impairments

Plaintiff argues that the ALJ erred when he found that her disability did not meet or equal one of the listed disabilities in 20 C.F.R. § 404, Subpt. P, App. 1. Specifically, plaintiff contends that she meets the requirements of Listing 1.04A. The claimant has the burden of proving that

she satisfies the criteria for a listed impairment based on medical evidence. Sullivan v. Zebley, 493 U.S. 521, 531 (1990). "The claimant must establish that [she] meets *each characteristic* of a listed impairment relevant to [her] claim." Tackett, 180 F.3d at 1099 (emphasis added). To meet the 1.04A criteria requirements, plaintiff must demonstrate: 1) evidence of nerve root compression characterized by neuro-anatomic distribution of pain; 2) limitation of motion of the spine; 3) motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss; and, 4) if there is involvement in the lower back, positive straight-leg raising test (sitting and supine). 20 C.F.R. § 404, Subpt. P, App. 1. Plaintiff claims that she meets these requirements. (Pl.'s Opening Brief at 7.)

To establish the first requirement, plaintiff relies on a May 23, 2001, examination by nurse practitioner Marguerite Smith, signed by Michael Petersen, D.O., in which Smith notes that plaintiff has "possible nerve root compression." Tr. 312. This observation, however, is not supported by the balance of the record. First, Smith's full observation reads, "I think this patient suffers from degenerative disk disease, with possible nerve root compression from a herniated disk at L5-S1. However, she *does not demonstrate this dramatically* in her physical examination." Id (emphasis added). Second, Smith's subjective opinion is contradicted by medical evidence. As the ALJ notes, MRI results from October of 2000 failed to reveal evidence of nerve root compression. Tr. 22, 162. Likewise, contemporaneous X-ray results did not demonstrate nerve root involvement. Tr. 163. In addition, Drs. Westfall and Spray reviewed plaintiff's medical records and failed to conclude that plaintiff met any listing. Tr. 495-502. "Whether the findings for an individual's impairment meet the requirements of an impairment in the listings is usually more a question of medical fact than a question of medical opinion."

6 - OPINION AND ORDER

S.S.R. 96-5p, *available at* 1996 WL 374183 at *3.  Accordingly, the ALJ properly relied on objective test results to support his finding.

For the second requirement, plaintiff relies on evaluations by the Grants Pass Therapy Center, Michael Peterson, D.O., and Pacific Spine and Pain Center, in which the treating medical sources note evidence of decreased range of motion.  (Pl.'s Opening Br. at 7.)  The point is immaterial, however, because the ALJ acknowledged that there was evidence of decreased range of motion.  Tr. 22.  A finding of decreased range of motion alone does not qualify plaintiff for listing under 1.04A.

For the third requirement, plaintiff again points to the May 2001, evaluation by nurse practitioner Smith, signed by Peterson, D.O., in which Smith notes that plaintiff "ha[s] some loss of sensation in the anterior left upper thigh area." Tr. 312.  Again, this observation is not supported by the record as a whole.  The ALJ addressed Smith's finding specifically, noting that her finding was "isolated" and had "never been produced consistently." Tr. 22.  In March 2001, Drs. Neumann and Rich found no evidence of sensory abnormality in the lower extremities. Tr. 282-84.  Likewise, in June 2001, David Hagie, D.O. noted that plaintiff's senses were "intact to soft touch and vibratory sense in upper and lower extremities bilaterally." Tr. 345.

For the fourth requirement, plaintiff relies on positive straight leg tests conducted by Chiropractor Owen Martin.  (Pl.'s Opening Brief at 7.)  Although the ALJ considered Martin's report, he noted that it is controverted by other assessments that appear in the record, and "lacks basic indicia of reliability." Tr. 25.  For example, on March 22, 2001, Dr. Saviers reported a negative straight leg raising test.  Tr. 290.  In addition, the ALJ reasonably afforded Martin's findings less weight because chiropractors are not considered acceptable medical sources.

7 - OPINION AND ORDER

Tr. 25; 20 C.F.R. § 404.1513(a). Because acceptable medical sources are the most qualified, "[t]he fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source.'" S.S.R. 06-03p, *available at* 2006 WL 2329939 at *5.

In sum, although plaintiff highlights evidence in the record to support a finding that she has an impairment that manifests some of the criteria listed under 1.04A, she fails to meet all of the specified criteria. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. at 530. Thus, the ALJ's determination that plaintiff's impairments do not meet or equal listing 1.04A is supported by substantial evidence and is free from legal error.

2.    Residual Functional Capacity Determination

Plaintiff contends that the ALJ erred in determining her RFC. Specifically, plaintiff claims that the ALJ erred by relying largely on the opinion of Dr. Daniel Saviers. (Pl.'s Opening Br. at 7.)[1]

To support this claim, plaintiff first alleges that the ALJ failed to grant sufficient weight to the June 2001, opinion of David Hagie, D.O., in which Hagie found that plaintiff had a sitting tolerance of thirty minutes, a standing tolerance of twenty minutes, and a walking tolerance of ten minutes. (Pl.'s Opening Br. at 8.), Tr. 344. This point is not well taken, first of all, because

---

[1] Plaintiff also argues that the ALJ erred by citing "Exhibit 8F" rather than "Exhibit 6F" when referencing Dr. Saviers' opinion. Although plaintiff correctly points out the ALJ's error, the error is "inconsequential to the ultimate nondisability determination" and is therefore harmless. *See* Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006).

8 - OPINION AND ORDER

the ALJ adequately accounted for Hagie's opinion. After citing Hagie's opinion and acknowledging that the plaintiff received extensive treatment in 2000 and 2001 for her back pain, the ALJ opined, "what cannot be ignored is the fact that much of the claimant's treatment arose out of, and was associated with her September 2000 workers [sic] compensation claim." Tr. 24. In light of this two year gap in treatment, the ALJ opined, "with this inconsistent and spotty record before me, I afforded the claimant the full benefit of the doubt and accepted the assessment of her workers [sic] compensation treating source, Dr. Saviers, recognizing that he very well may have overstated her limitations in response to the opinions offered by the employer's medical consultants." Tr. 24. Given the absence of consistent treatment, the lesser weight afforded to Hagie's opinion is reasonable.

Plaintiff also claims that the ALJ failed to grant sufficient weight to the March 2001, opinion of Dr. Daniel Saviers in which Saviers noted that plaintiff could sit, stand, or walk for thirty minutes per episode for up to four hours per day and lift or carry ten pounds frequently and twenty pounds occasionally. (Pl.'s Opening Br. at 8.) This argument also lacks merit. Although Dr. Saviers did make this finding, he also opined that plaintiff was capable of working full time if she could change positions. Tr. 291. Thus, I find that the ALJ afforded adequate weight to Saviers' opinion.

Next, plaintiff argues that the ALJ failed to give sufficient weight to her testimony that she could only sit for thirty to forty-five minutes and stand for fifteen to twenty minutes. (Pl.'s Opening Br. at 8.) I find that the ALJ gave plaintiff's testimony sufficient weight because plaintiff's testimony is contradicted by objective medical evidence. Tr. 25. In addition, plaintiff's credibility is undermined by inconsistent statements and actions. Tr. 26. For example,

9 - OPINION AND ORDER

plaintiff asserts that she is confined to her bed ninety percent of the day, but there is no support for this claim elsewhere in the record. As the ALJ noted, "it is highly doubtful that an individual who is truly bedridden ninety percent of the time would fail to bring such dire circumstances to the attention of those individuals . . . with the knowledge and ability to improve her situation." Id. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. Andrews, 53 F.3d at 1039. Here, the ALJ's credibility determination is supported by specific, non-arbitrary findings. *See* Rollins v. Massanari, 261 F.3d 853, 856-57 (9th Cir. 2001).

In determining a plaintiff's RFC, the ALJ must consider the record as a whole and explain how he weighs the medical evidence and testimony. The weight given to a treating medical source's opinion depends on the nature, length, frequency, and extent of the treatment relationship, the degree to which the treating source's opinion is supported by medical signs and laboratory findings, and its inconsistency with the rest of the evidence, including the claimant's daily activities. *See* 20 C.F.R. § 404.1527(d); S.S.R. 96-2p, *available at* 1996 WL 374188 at *2-3. Here, the ALJ considered the record as a whole and, after evaluating the relevant medical information and plaintiff's testimony, determined that the opinion of Dr. Saviers was the most persuasive regarding plaintiff's condition during the relevant time period. Thus, the weight given to Dr. Saviers' opinion is sound. As discussed above, the ALJ's reasons for relying on Saviers' opinion are supported by substantial evidence; therefore, the RFC determination is free of legal error.

    3.       Testimony by Vocational Expert

Finally, plaintiff contends that the VE's opinions are not supported by substantial evidence. (Pl.'s Opening Br. at 8.) Specifically, plaintiff argues that the ALJ erred when he determined that plaintiff could perform the duties of a gate guard even though the Dictionary of Occupational Titles ("D.O.T.") lists gate guard as a semiskilled job; and when he found that plaintiff was capable of working "light" jobs despite the fact that she cannot perform the full range of duties consistent with the regulatory definition of "light work." Id.

Plaintiff first argues that the ALJ erred in accepting the VE's testimony because the job of gate guard is listed as a specific vocational preparation ("SVP") level 3 or semiskilled job in the D.O.T., and the ALJ opined that a SVP 3 classification "would be questionable" for plaintiff. (Pl.'s Opening Br. at 8.) This argument misses the mark. Despite the fact that the D.O.T. lists "gate guard" as a semiskilled job, there is substantial evidence in the record to support the ALJ's determination. The VE testified that the job of gate guard is no longer semiskilled in nature, stating that "[e]ven though D.O.T. describes this as a level three semi-skilled job, it's my opinion that since the date of last update on this was in 1980, that this is really an entry level job and appears appropriate ." Tr. 736. Although the D.O.T. raises a rebuttable presumption regarding job classification, the ALJ may rely on expert testimony which contradicts the D.O.T. so long as the record contains "persuasive evidence to support the deviation." Johnson v. Shalala, 60 F.3d 1428, 1435. Thus, the ALJ reasonably accepted the VE's assessment that the job of gate guard had evolved into an entry level position.

Plaintiff also posits that the ALJ's determination is not supported by substantial evidence because plaintiff cannot perform the full range of duties associated with "light work."

11 - OPINION AND ORDER

Specifically, plaintiff argues that in order to work in a job classified as "light" she must be capable of performing "substantially all" of the activities described in the definition of "light work" codified at 20 C.F.R. § 404.1567(b).  Although plaintiff points to the relevant regulatory definition, she does not offer any evidence showing that the ALJ erred.  The regulations broadly specify that the Medical-Vocational Guidelines or "grids" are to be employed and a conclusion directed regarding disability when a claimant's "vocational factors and [RFC] coincide with *all* of the criteria of a particular rule."  20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(a) (emphasis added).  If this occurs, the grid directs a finding of "disabled" or "not disabled."  However, if the claimant's vocational factors and RFC do not match the criteria set forth in the grids, they are merely used as a framework.  In such an instance, it is appropriate for an ALJ to find that a claimant is able to perform a limited range of work in a particular exertional category, and then to rely on a VE's opinion to determine whether the claimant is disabled.  *See* S.S.R. 83-11, *available at* 1982 WL 31252 at *1.  The grids are also to be used as a framework when, as here, the claimant has non-exertional limits.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e).  "When [the grids] do not adequately take into account claimant's abilities and limitations, [they] are to be used only as a framework, and a vocational expert must be consulted."  Thomas v. Barnhart, 278 F.3d 947, 960 (9th Cir. 2002); Widmark v. Barnhart, 44 F.3d 1063, 1069-70 (9th Cir. 2005); *see also* S.S.R. 83-14, *available at* 1983 WL 31254 at *4.

If the ALJ finds that a claimant cannot perform her past relevant work, the Commissioner has the burden of showing that the claimant can perform jobs that exist in significant numbers in the national economy.  Tackett, 180 F.3d at 1100.  Because the ALJ determined that plaintiff's RFC fell somewhere between the "light" and "sedentary" exertional levels, and plaintiff has

exertional as well as non-exertional limitations, the ALJ appropriately used the grids as a framework and solicited additional testimony from the VE. The ALJ posed a hypothetical based upon a proper RFC finding that included all of plaintiff's credible exertional and non-exertional limitations. Tr. 734-35. In response, the VE rendered an opinion based on plaintiff's age, education, vocational factors, and RFC. Tr. 736-37. After reviewing the record as a whole and considering the VE's opinion, the ALJ reasonably concluded that plaintiff can perform jobs existing in significant numbers in the national economy. Tr. 27. Accordingly, the ALJ did not err when he ultimately found that plaintiff was not disabled within the meaning of the Social Security Act.

## **CONCLUSION**

For the foregoing reasons, and based on my review of the record, the Commissioner's decision denying plaintiff's application for a period of disability and for disability insurance benefits under Title II is based on correct legal standards and is supported by substantial evidence in the record. Therefore, the Commissioner's decision is AFFIRMED.

DATED this 2nd day of September, 2006.

    /s/ Robert E. Jones
ROBERT E. JONES
U.S. District Judge